IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 25-3953 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPH MAHLE, | ) | |
| 5137 Klingle St. NW | ) | |
| Washington, DC 20016 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, the United States of America, at the request and with the authorization of a delegate of the Secretary of the Treasury and at the direction of the Attorney General of the United States, brings this action to collect civil penalties assessed under 31 U.S.C. § 5321(a)(5) against Defendant Christoph Mahle ("Dr. Mahle") for his willful failure to timely file FBARs reporting his foreign financial accounts during the 2009 and 2010 calendar years.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355(a) because the action arises under a federal statute, the United States is the Plaintiff, and the action seeks to recover civil penalties incurred under an Act of Congress.

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because Dr. Mahle resides at 5137 Klingle St. NW, Washington, D.C. 20016, which is within the District of Columbia.

### PARTIES

3. Plaintiff is the United States of America.

4. Defendant is Dr. Mahle. Dr. Mahle is not a U.S. citizen (he is an Austrian citizen); but he is a long-term U.S. resident, is a U.S. green card holder, and is married to an American.[1]

## THE FBAR REPORTING RULES

5. 31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States persons to report certain transactions and relationships with foreign financial entities.

6. Under the statute's implementing regulations, each United States person who has a financial interest in or signatory authority over foreign reportable accounts that exceed $10,000 in aggregate value must report those accounts to the United States for each year such relationship exists. *See* 31 C.F.R. §§ 1010.350(a), 1010.306(c).

7. For purposes of FBAR statute's reporting rules, a "United States person" includes U.S residents, 31 C.F.R. § 1010.350(b)(2), and "reportable accounts" includes bank accounts, securities accounts, and other financial accounts. 31 C.F.R. § 1010.350(c).

8. For the years at issue (2009 and 2010), persons were required to report a relationship with a foreign account on Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. 31 C.F.R. § 1010.350(a). This form is commonly known as an "FBAR."

9. An FBAR requires a United States person to annually disclose—for each reportable account in which that person has a financial interest in or signature authority over—the account number, the account type, the name and mailing address of the financial institution in which the account is held, and the maximum value of the account during that calendar year. *See* Form TD F 90-22.1.

10. For the years at issue (2009 and 2010), the FBAR filing due date was June 30 of the following year (June 30, 2010, and June 30, 2011). *See* 31 C.F.R. § 1010.306(c).

---

[1] Dr. Mahle's wife, Mrs. Mary Mahle, was born in the U.S. in 1941 and is a U.S. citizen.

11. 31 U.S.C. § 5321(a)(5) authorizes the imposition of civil penalties for a willful failure to comply with the requirements of 31 U.S.C. § 5314.

12. The maximum amount of the penalty for a willful failure to report an account is $100,000 or 50% of the balance in the account at the time of the violation, whichever is greater. *See* 31 U.S.C. § 5321(a)(5)(C). The penalty under 31 U.S.C. 5321(a)(5)(C) is subject to interest and late-payment penalties under 31 U.S.C. § 3717.

## DR. MAHLE'S ACTIVITIES AND ACCOUNTS

13. Dr. Mahle is a retired electrical engineer with a PhD in microwave technology.

14. In 1968, Dr. Mahle moved to the United States to work as an engineer for Communications Satellite Corporation ("COMSAT") in Washington, D.C.

15. In 1975, Dr. Mahle married his wife, Mrs. Mary Mahle. They had two children together.

16. The Mahles bought their home in Washington, D.C. in 1979. They still live in this home.

17. Dr. Mahle eventually became a Vice President at COMSAT and retired in 1996.

18. During 2009 and 2010, Dr. Mahle had four reportable accounts in foreign countries, including accounts at: (1) UBS; (2) Voralberger; (3) Vitapan; and (4) LLB/Trust.

### *UBS (Switzerland)*

19. In the late 1950s, at the request of his father, Dr. Mahle opened a bank account at what would become UBS AG ("UBS") in Switzerland.

20. During 2009 and 2010, the UBS's account balance was between $24,000-$25,000.

21. In 2011, UBS informed Dr. Mahle of its reporting obligation to the IRS under the Foreign Account Tax Compliance Act ("FATCA"); Dr. Mahle closed the account later that year.

22. During 2009 and 2010, Dr. Mahle was the sole account holder of the UBS account.

3

### *Voralberger (Austria)*

23. In the 1990s, Dr. Mahle opened a bank account at Vorarlberger Landes und Hypothekebank AG ("Voralberger") in Austria.

24. During 2009 and 2010, the Voralberger's account balance was between $11,000-$12,000.

25. During 2009 and 2010, Dr. Mahle was the sole account holder of the Voralberger account.

26. Upon information and belief, the Voralberger account is still open.

### *Vitapan (Switzerland)*

27. After Dr. Mahle moved to the U.S., his father distributed assets to him as shares in Swiss companies. The Swiss securities could allegedly only be owned by Swiss residents.[2]

28. Upon information and belief, his family's attorneys advised him that if he ceased to be a Swiss resident, his ownership of the securities would be prohibited under Swiss law.

29. Dr. Mahle relinquished his Swiss residency after obtaining his green card in the U.S. and was advised to form Vitapan A.G. ("Vitapan"), a Swiss company, to hold the securities.

30. Dr. Mahle was advised to, and did, acquire a 98% ownership interest in Vitapan.

31. Vitapan was funded by the shares in Swiss companies owned by Dr. Mahle.

32. While Dr. Mahle left the management of the assets with a Swiss law firm, Dr. Mahle maintained an ownership interest in the Swiss securities held by Vitapan.

33. On December 31, 2010, Vitapan held shares in roughly ten Swiss companies. During 2009 and 2010, the combined value of Vitapan's shares was approximately $3,000,000.

34. During 2009 and 2010, Dr. Mahle was a majority shareholder in Vitapan.

---

[2] The shares were *nameaktien*, which under Swiss law, could only be held by Swiss residents.

### *LLB/Trust (Lichtenstein)*

35. In 1983, Dr. Mahle opened an account at Liechtensteinische Landesbank ("LLB") in Vaduz, Lichtenstein. The assets in the account were inherited from his father and were intended to support Dr. Mahle and his siblings. Dr. Mahle was a co-owner of the account.

36. In 1996, Dr. Mahle retired from his position as Vice President at COMSAT Laboratories.

37. In 1997, Dr. Mahle migrated the LLB account into a trust structure named Malich Familienstiftung ("Mahle Family Trust" or "the Trust"). Dr. Mahle signed the paperwork creating the trust to manage and control the assets. Dr. Mahle alleges that he was chosen as the trustee because he was the most responsible with money of his four siblings.

38. The Trust instrument listed Dr. Mahle as the primary beneficiary of the Trust. After Dr. Mahle, it then lists Dr. Mahle's wife as the secondary beneficiary, followed by Dr. Mahle's two children. The instrument provided that should the first four beneficiaries die, Dr. Mahle's brother Eberhard and Dr. Mahle's wife's sister are remainder beneficiaries.

39. The source of funds in the Trust LLB account was an inheritance from his father. During an interview with the IRS, Dr. Mahle stated that the assets in the Trust were to be used to benefit himself and his three siblings, with the primary beneficiary being his sister.

40. As the grantor/creator of the Trust and the primary beneficiary of the Trust, Dr. Mahle had a financial interest in the LLB/Trust account during 2009 and 2010.

41. During 2009 and 2010, the Trust assets held in the LLB account were over $8,000,000.

42. In a letter dated April 5, 2011, LLB informed Dr. Mahle of its reporting obligations to the IRS under the Foreign Account Tax Compliance Act ("FATCA"). Dr. Mahle was named in the letter in his capacity as the beneficial owner of the Trust held at LLB.

43. In August of 2011, Dr. Mahle closed the LLB account and dissolved/liquidated the Trust.

## DR. MAHLE VIOLATED THE FBAR STATUTE

44. During 2009 and 2010, Dr. Mahle was a "United States person" under the FBAR reporting statute because he was a U.S. resident.  31 C.F.R. § 1010.350(b)(2).

45. During 2009 and 2010, Dr. Mahle had a financial interest in, or signature authority over, four accounts, all of which were "reportable accounts". 31 C.F.R. § 1010.350(c).

46. Dr. Mahle's accounts were in "foreign countries", including Switzerland (UBS and Vitapan), Lichtenstein (LLB/Trust), and Austria (Voralberger). 31 C.F.R. § 1010.350(d).

47. Dr. Mahle had a financial interest in or signature authority over each of the four accounts – UBS, Vitapan, Voralberger, and LLB/Trust – because he was the "owner of record" or "holder of legal title" for the account and/or had the authority "to control the disposition of money, funds, or other assets" held in the account. 31 C.F.R. § 1010.350(e)-(f).

48. The aggregate balance of the four financial accounts identified in ¶ 47, above, exceeded $10,000 during calendar years 2009 and 2010. *See* 31 C.F.R. § 1010.306(c).

49. Dr. Mahle was required to file FBARs in 2009 and 2010 by the June 30 due date. *Id.*

50. Dr. Mahle failed to file an FBAR for 2009 by June 30, 2010.

51. Dr. Mahle failed to file an FBAR for 2010 by June 30, 2011.

52. Dr. Mahle violated the FBAR statute in 2009 and 2010. *See* 31 U.S.C. § 5321(a)(5).

## HIS VIOLATION WAS WILLFUL

53. Dr. Mahle's violation of the FBAR statute was willful. *See* 31 U.S.C. § 5321(a)(5).

54. In 2011, Dr. Mahle's foreign banks and service providers informed him that they would comply with FATCA and disclose his account information with the United States.

55. On April 5, 2011, LLB informed Dr. Mahle of its reporting obligation under FACTA.

56. In the letter dated April 5, 2011, LLB asked Dr. Mahle to send them his Form W-9 and for his authorization to disclose his LLB/Trust account information to the IRS.

57. On July 16, 2011, the Swiss Federal Supreme Court approved the turnover of 255 UBS depositor information approved by FINMA. U.S. depositor information would be shared with the U.S. government. UBS advised its customers – including Dr. Mahle – to apply for the IRS' Offshore Voluntary Disclosure Initiative ("OVDI") program, which he did.

58. On or around August of 2011, Dr. Mahle applied to enter the IRS's OVDI program.

59. Dr. Mahle was formally accepted into the OVDI program on September 28, 2011.

60. Dr. Mahle did not timely file FBARs for 2009 or 2010; he late filed both years' FBARs (along with other years) only after he entered the IRS' OVDI program in 2011.

*__Failure to fully disclose accounts__*

61. In his initial OVDI application dated August 22, 2011, Dr. Mahle reported his interests in UBS, Vorarlberger, and Vitapan; he did not report his interest in the Trust held at LLB.

62. Dr. Mahle was the primary beneficiary of the Trust held at LLB in Lichtenstein.

63. The LLB/Trust had significant assets ranging between $8,000,000–$11,000,000.

64. Despite learning that the bank would be disclosing U.S. owners to the IRS, Dr. Mahle failed to disclose his interest in the LLB/Trust account in his 2011 OVDI application.

65. Upon information and belief, Dr. Mahle closed the LLB/Trust account in August of 2011.

*__Failure to report accounts on tax returns__*

66. Question 7a on Schedule B asked if he had an interest in or signature authority over a financial account in a foreign country. The question is answered by checking boxes "yes" or "no". The question also referred him to Form TD F 90-22.1, the FBAR form.

67. On Schedule B of his returns, Dr. Mahle answered "no" in response to a question about whether he had an interest in or signature authority over any foreign accounts.

68. In 2003, Dr. Mahle began receiving a pension from the Swiss government. Dr. Mahle reported this income on his U.S. tax returns (despite not receiving a Form 1099); but he did not report any income from his foreign accounts on his U.S. tax returns.

69. Dr. Mahle signed, under penalty of perjury, the 2009 and 2010 tax returns (Form 1040s), both of which failed to disclose his interests in his foreign financial accounts.

### *Held accounts in the name of a foreign entity*

70. Dr. Mahle had investments inside a corporate entity in Switzerland (Vitapan).

71. Vitapan was run so that cash was not distributed to Dr. Mahle; Dr. Mahle's investment income was purposefully always recharacterized as a "loan payable" to him.

72. Vitapan held Swiss securities that were owned by Dr. Mahle.

73. Dr. Mahle had a 98% ownership interest in Vitapan.

### *Failure to disclose accounts to return preparer/CPA*

74. Dr. Mahle did not inform his tax return preparer about Vitapan or the LLB/Trust.

75. Although he had other interest, dividend and capital gain producing investments in the U.S., Dr. Mahle did not tell his tax return preparer about the offshore investments inside the Vitapan corporation in Switzerland or any of the related income.

76. Dr. Mahle did not ask his tax return preparer if he had any tax reporting responsibility relating to the Vitapan investments.

77. Dr. Mahle did not discuss the LLB/Trust arrangement with his tax return preparer, nor did he ask his preparer if he had any tax reporting responsibilities related to the Trust.

78. During an interview with the IRS, Dr. Mahle described the Trust held as having been established for the benefit of Dr. Mahle's siblings, particularly his widowed sister; however, Dr. Mahle's sister was never mentioned in the trust formation documents.

***Maintained accounts at UBS and LLB***

79. During 2009 and 2010, Dr. Mahle's UBS account was open.

80. On February 18, 2009, UBS signed a deferred prosecution agreement with DOJ admitting that it helped U.S. taxpayers hide accounts from the IRS.[3]

81. During 2009 and 2010, Dr. Mahle's LLB/Trust account was open.

82. On July 24, 2013, LLB signed a non-prosecution agreement with DOJ admitting that it aided and abetted U.S. tax and FBAR evasion.[4]

## THE ASSESSMENT OF FBAR PENALTIES

83. On July 16, 2019, the IRS sent Dr. Mahle a letter proposing FBAR penalties and giving him an opportunity to protest the penalties. Dr. Mahle filed a timely protest with the IRS Independent Office of Appeals. After a hearing, the IRS Appeals officer sustained the FBAR penalties in full and the IRS assessed penalties on November 17, 2023.

84. For 2009, the IRS assessed a willful FBAR penalty of $2,950,958. The penalty is based on the value of the unreported accounts and less than the statutory maximum.

85. For 2010, the IRS assessed a willful FBAR penalty of $2,885,322. The penalty is based on the value of the unreported accounts and less than the statutory maximum.

86. The IRS assessed FBAR penalties for the 2009 and 2010 years on November 17, 2023.

87. The IRS sent a letter demanding payment of the FBAR penalties on December 18, 2023.

---

[3] *See* UBS AG – Deferred Prosecution Agreement (February 19, 2009).

[4] *See* Liechtensteinische Landesbank AG - Non-Prosecution Agreement (July 24, 2013).

**COUNT ONE: REDUCTION OF FBAR PENALTIES TO JUDGMENT**

88. During 2009 and 2010, Dr. Mahle was a U.S. person who had a financial interest in or signatory authority over four reportable foreign financial accounts – UBS (Switzerland), Voralberger (Austria), Vitapan (Switzerland), and LLB/Trust (Lichtenstein).

89. During 2009 and 2010 the aggregate value of these accounts exceeded $10,000.

90. Dr. Mahle failed to timely file FBARs in 2009 and 2010 with respect to the four accounts identified in ¶ 88, above.

91. Dr. Mahle's failure to timely file FBARs in 2009 and 2010 was willful.

92. On November 17, 2023, a delegate of the Secretary of the Treasury assessed civil penalties against Dr. Mahle under 31 U.S.C. § 5321(a)(5) for his willful failure to timely file FBARs in 2009 and 2010 with respect to the accounts identified in ¶ 88, above.

93. The IRS assessed penalties of **$2,950,958.00** for 2009 and **$2,885,322.00** for 2010.

94. For both years (2009 and 2010), Dr. Mahle was assessed a total penalty of **$5,836,280.00**.

95. A delegate of the Secretary of the Treasury sent notice of the civil penalty assessments to Dr. Mahle and demanded payment of the assessments.

96. Despite notice and demand for payment, Dr. Mahle has failed to fully pay the penalties assessed against him.

97. Interest and penalties have accrued and will continue to accrue on the penalties described in ¶ 93, above, pursuant to 31 U.S.C. § 3717 until they are paid in full.

98. The total balance due, consisting of FBAR penalties assessed, penalties for late payment under 31 U.S.C. § 3717(e)(2), and interest under 31 U.S.C. § 3717, is **$6,837,881.59**.[5]

---

[5] The total amount consists of the assessed FBAR penalties in the amount of **$5,836,280.00**, plus accrued and assessed late payment penalties in the amount of **$667,734.39** and accrued and assessed interest in the amount of **$333,867.20**, through November 13, 2025.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court:

A. Enter judgment in favor of the United States and against Defendant Dr. Mahle in the
amount of **$6,837,881.59**, as of November 13, 2025, for the penalties assessed against
him under 31 U.S.C. § 5321(a)(5) for 2009 and 2010, plus further interest and statutory
additions that have occurred and will continue to occur until the liability is paid in full;

B. Award to the United States its costs of prosecuting this action; and

C. Grant such other and further relief as the Court deems just and equitable.

Dated: November 14, 2025                    */s/ Elizabeth W. Pruitt*
                                            ELIZABETH W. PRUITT
                                            Trial Attorney, Tax Division
                                            U.S. Department of Justice
                                            P.O. Box 227
                                            Washington, D.C. 20044
                                            Tel: (202) 598-7806
                                            Fax: (202) 514-6866
                                            Elizabeth.Pruitt@usdoj.gov
                                            D.C. Bar ID: 90034388
                                            *Counsel for the United States of America*